UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL HARRIOT,

                              Petitioner,

              -against-

WARDEN J. L. JAMISON,

                              Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/2025_____

24 Civ. 208 (AT) (JLC)

**OPINION
AND ORDER**

ANALISA TORRES, District Judge:

Petitioner *pro se*, Michael Harriot, brings this petition (the "Petition") against

Respondent, Warden J.L. Jamison (the "Government"), for a writ of habeas corpus under 28

U.S.C. § 2241.  Pet., ECF No. 1.  Pursuant to an order of reference, ECF No. 9, the Honorable

James L. Cott issued a report (the "R&R") recommending that the Petition be denied, *see*

*generally* R&R, ECF No. 26.  Harriot's timely objections to the R&R are now before the Court.

Objs., ECF No. 27; *see also* Resp., ECF No. 28; Reply, ECF No. 30.  For the reasons stated

below, the objections are sustained in part and overruled in part and the Petition is denied.

**BACKGROUND**

I.    Factual and Procedural Background

On August 24, 1997, Harriot was removed from the United States pursuant to a Notice

and Order of Expedited Removal ("NOER") dated August 23, 1997.  ECF No. 23-4 at 1; NOER,

ECF No. 23-4 at 3–4.  He twice reentered the country and was removed on September 29 and

December 29, 1998.  Harriot Decl. ¶ 22, ECF No. 25.[1]  Thereafter, Harriot again reentered the

country.

By judgment dated May 1, 2001, Harriot was sentenced to life imprisonment, to be

---

[1] The Declaration of Michael O. Harriot ("Harriot Decl.") is located at ECF No. 25, pages 9–13.

followed by ten years of supervised release for conspiracy to possess with intent to distribute marijuana, cocaine, and cocaine base, in violation of 21 U.S.C. § 846; use of a person under 18 years of age to aid in distribution and possession with intent to distribute marijuana, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 861(a)(1); and illegal reentry, in violation in 8 U.S.C. § 1326(a). FSA Order at 1, *United States v. Harriot*, No. 3:99 Cr. 341 (D.S.C. Oct. 5, 2021), ECF No. 428.

On September 5, 2001, while Harriot was serving his life sentence, the Immigration and Naturalization Service ("INS") issued a "Notice of Intent/Decision to Reinstate Prior Order" ("Reinstatement Order") stating that the INS intended to reinstate the NOER and remove Harriot because he had illegally reentered the country following the NOER.[2] ECF No. 23-4 at 1.

About twenty years later, in October 2021, the Honorable Margaret B. Seymour of the United States District Court for the District of South Carolina granted Harriot's motion for a sentence reduction under the First Step Act of 2018 (the "FSA"), reducing Harriot's sentence to 360 months' imprisonment, to be followed by eight years of supervised release. FSA Order at 3, 6; ECF No. 23-1 at 2–3.

In February 2023, the Bureau of Prisons ("BOP") informed Harriot that it would apply 365 days of credit he had earned under the FSA toward early release, as required by the statute, resulting in a one-year advancement of Harriot's projected release date, from March 12, 2025, to March 12, 2024.[3] Harriot Decl. ¶ 5.

---

[2] Although the Reinstatement Order is signed above the line labeled "Signature of Alien," *see* ECF No. 23-4 at 1, Harriot denies receiving or signing the Reinstatement Order. *See* Objs. at 2; *see also* Harriot Decl. ¶ 26. The signature does not appear to match Harriot's signature on the NOER. *Compare* ECF No. 23-4 at 1, *with id.* at 2.

[3] The record suggests that, at one time, BOP believed that Harriot's projected release date was September 8, 2024, or September 8, 2025. *See* Objs. at 11 (BOP Individualized Needs Plan dated September 20, 2023, showing a projected release date of September 8, 2024, pursuant to the FSA); ECF No. 4 at 19 (BOP Sentence Monitoring

On or about October 17, 2023, Immigration and Customs Enforcement ("ICE") lodged a detainer with BOP, requesting that BOP notify the Department of Homeland Security ("DHS") at least 48 hours before Harriot was to be released from custody.  Detainer at 1, ECF No. 23-3; *see* Lewis Decl. ¶ 9, ECF No. 23.  The detainer stated: "DHS has determined that probable cause exists that [Harriot] is a removable alien . . . based on . . . [a] final order of removal against [him]."  Detainer at 1 (capitalization altered).

In November 2023, Harriot asked his BOP case manager for an update on his FSA credits and release date.  ECF No. 4 at 2 (citing *id.* at 17 (BOP printout dated November 18, 2023)).  He was told that BOP had determined based on the October 2023 detainer that he was no longer eligible for application of the FSA credits he had earned, pushing his projected release date back one year, from March 12, 2024, to March 12, 2025.  *Id.* at 2; *see supra* note 3.

On November 22, 2023, Harriot filed an Informal Resolution Form B-8 with his BOP case manager, stating that BOP had violated federal law by denying application of his FSA credits based on an immigration detainer.  *See* ECF No. 4 at 5; Pet. at 3, 7.  On December 1, BOP denied Harriot's request to apply his FSA credits toward early release.  ECF No. 4 at 8.  On December 11, Harriot prepared a Request for Administrative Remedy Form BP-9 ("Form BP-9") to escalate his complaint to the warden of the facility where he was imprisoned.  *See id.* at 9; Pet. at 4.  On January 5, 2024, the warden denied Harriot's request.  Lewis Decl. ¶ 18.  That same

---

Computation Data printout dated November 20, 2023, showing a projected release date of September 8, 2025). Harriot contends that BOP later determined that his release date should be advanced by an additional six months irrespective of FSA credits.  *See* ECF No. 4 at 1 n.1.  With application of FSA credits, his release date would, therefore, be March 12, 2024.  *See* Harriot Decl. ¶ 5.  Without application of FSA credits, his release date would be March 12, 2025.  ECF No. 4 at 1 n.1.  These statements in Harriot's declaration, made based on his personal knowledge under penalty of perjury, and his representations to this effect in his briefing are independently corroborated by the Government's declaration and BOP's website, both of which list Harriot's projected release date as March 12, 2025.  *See* Lewis Decl. ¶ 8, ECF No. 23; BOP, Inmate Locator (last visited Feb. 2, 2025), https://www.bop.gov/inmateloc/.

day, Harriot prepared his Petition and accompanying memorandum, which the Court received on

January 8.  *See* Pet. at 1, 10; ECF No. 4.

On January 12, 2024, the Court ordered the Government to respond to Harriot's petition

and referred the Petition to Judge Cott for a report and recommendation.  ECF Nos. 8–9.  The

Government filed its response on April 11.  ECF Nos. 22–24.  Accompanying the Government's

response are copies of the NOER and Reinstatement Order.  ECF No. 23-4.  In a declaration,

BOP states that it first received the NOER and Reinstatement Order from ICE on April 8, 2024,

about one month after Harriot was scheduled to be released had BOP applied his FSA credits.

Lewis Decl. ¶ 10; *see also* Harriot Decl. ¶ 6.

II.    The R&R

In the R&R, Judge Cott rejected the Government's argument that Harriot's Petition

should be denied for lack of exhaustion.  R&R at 5–8.  Although Harriot failed to appeal the

warden's denial of his Form BP-9 and, therefore, failed to exhaust his administrative remedies,

Judge Cott concluded that any procedural default should be excused because, if the Court were to

"deny Harriot's petition without prejudice for failure to exhaust, there is a high likelihood that

Harriot's claims would be partially or entirely moot by the time [they] once again reache[d]

federal court."  *Id.* at 6.  Judge Cott further noted that Harriot began exhausting his

administrative remedies as soon as he learned of the denial of his FSA credits, and that he filed

the Petition only after being informed by BOP that he would imminently be transferred to an

unknown jurisdiction.  *Id.* at 7–8.

Reaching the merits of Harriot's claims, Judge Cott concluded that the Petition should be

denied.  He found that the NOER appears to be a valid, current, and final order of removal, and

that the FSA therefore prohibits BOP from applying Harriot's earned credits toward early release. *Id.* at 8–10. Judge Cott also concluded that BOP's decision not to apply Harriot's credits did not violate his due process rights or constitute cruel and unusual punishment. *Id.* at 10–12.

## DISCUSSION

### I.    Legal Standard

A § 2241 petitioner bears the burden of proving by a preponderance of the evidence "that he is being held contrary to law." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011). Courts afford "special solicitude" to *pro se* litigants, interpreting their filings "to raise the strongest claims that [they] suggest[]." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (citation omitted).

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to the R&R, the Court reviews *de novo* those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court may adopt portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted). An R&R is clearly erroneous if the Court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

II.    <u>Application</u>

Harriot raises several objections to the R&R.  *See generally* Objs.; Reply.  Because the Government does not object to Judge Cott's conclusion that any failure by Harriot to administratively exhaust his claims should be excused—and this conclusion is not clearly erroneous—the Court proceeds to the merits of Harriot's Petition.

Under the FSA, a person in BOP custody who has earned time credits based on their participation in certain activities while incarcerated is "ineligible to apply [those] time credits" toward early release "if the prisoner is the subject of a final order of removal under any provision of the immigration laws."  18 U.S.C. § 3632(d)(4)(E)(i).  Harriot claims that he is not subject to a final order of removal and BOP therefore violated the FSA by denying him application of his earned time credits.  In the alternative, he claims that even if he is subject to a final order of removal, BOP lacked sufficient evidence of that fact when it denied application of his credits in November 2023.  The Court addresses each argument in turn.

A.    Validity of the Removal Order

In the R&R, Judge Cott concluded that the NOER is a final order of removal and, therefore, that BOP is prohibited from applying the credits Harriot has earned under the FSA.  R&R at 8–9.  In support of his conclusion, Judge Cott cited recent, out-of-circuit decisions in which district courts have found that expedited removal orders like the NOER constitute "final order[s] of removal" for purposes of the FSA.  *See id.*

Harriot contends that Judge Cott misunderstood the arguments he advanced in his Petition and that the out-of-circuit decisions Judge Cott relied upon are unpersuasive.  Objs. at 5–7.  Specifically, Harriot argues that the R&R failed to consider whether the Reinstatement Order

is valid. *See id.* at 6–7. It is not, he argues, because he never had the opportunity to contest the INS' factual or legal determinations underlying the Reinstatement Order, never knew about the order to begin with, and never signed it. *See* Harriot Decl. ¶ 26; Objs. at 2, 6–7. The Court does not address this argument because even if the Reinstatement Order were invalid (an issue the Court does not decide), BOP would be entitled to rely on the earlier NOER to conclude that Harriot is subject to a final order of removal. By law, the NOER is the order "under" which Harriot currently faces removal.[4] 8 U.S.C. § 1231(a)(5).

Harriot argues in the alternative that the NOER is not a "final order of deportation" as defined in the immigration laws and, therefore, it is not a "final order of removal" as required by the FSA.[5] Reply at 4–5. The immigration laws define an "order of deportation" as the order of an "administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A). Such an order becomes "final" "upon the earlier of— (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the

---

[4] To be sure, the mere presence of a prior removal order in a person's immigration record may not be enough in all cases, by itself, to establish that a person is the subject of a valid and current "final order of removal" for purposes of the FSA. 18 U.S.C. § 3632(d)(4)(E)(i). Harriot's NOER suffices only because it indicated that he was prohibited from reentering the country for a period of five years from the date of his departure and his presence in the country in connection with his 2001 convictions indicate that he unlawfully reentered the country within the five-year period and is, therefore, subject to removal "under" the NOER. 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.").

[5] The Court understands the definition of an "order of deportation" at 8 U.S.C. § 1101(a)(47)(A) to encompass what is currently called an "order of removal" under the immigration laws. *See Nasrallah v. Barr*, 590 U.S. 573, 579, 581 (2020) (applying the definition of "order of deportation" at § 1101(a)(47)(A) to an "order of removal"); *Vartelas v. Holder*, 566 U.S. 257, 262 (2012) (explaining that in the 1990s, Congress "abolished the distinction between exclusion and deportation procedures and created a uniform proceeding known as 'removal'"). Accordingly, the Court does not interpret Harriot's argument as turning on the use of the word "removal" in the FSA and "deportation" at 8 U.S.C. § 1101(a)(47)(A). His argument, rather, is that the "final order of removal" referenced in the FSA is coextensive with 8 U.S.C. § 1101(a)(47)'s definition of a "final order of deportation."

7

expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." *Id.* § 1101(a)(47)(B).  As Harriot correctly points out, expedited removal orders like the NOER are generally *not* subject to review by the Board of Immigration Appeals.  Objs. at 5; *see* 8 U.S.C. § 1225(b)(1)(C) (providing that expedited removal orders are "not subject to administrative appeal," except in circumstances not applicable here).  Harriot argues, therefore, that the NOER is not "final" for purposes of the immigration laws.

Under government regulation, expedited removal orders like the NOER are considered "final" after review and approval by an "appropriate supervisor."  8 C.F.R. § 235.3(b)(7).  Because Harriot's NOER was so reviewed and approved, *see* NOER, it would be considered "final" by the Government under the immigration laws and their implementing regulations.  Harriot contends that, to the extent 8 U.S.C. § 1101(a)(47)(B)'s definition of "final" is ambiguous as applied to an expedited removal order like the NOER because of the lack of administrative review, the regulation at 8 C.F.R. § 235.3(b)(7) is entitled to no deference and should be disregarded under the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  *See* Reply at 4–5.

The Court does not reach this question.  Harriot's burden is to demonstrate that the NOER is not a "final order of removal" within the meaning of the FSA, and the FSA incorporates *all* provisions of immigration law, not just 8 U.S.C. § 1101(a)(47)'s definition of a final "order of deportation."  *See* 18 U.S.C. § 3632(d)(4)(E)(i) (citing 8 U.S.C. § 1101(a)(17)).  Taken as a whole, the expedited removal and jurisdiction-stripping provisions of the immigration laws reflect a concerted effort by Congress to impose a statutory scheme that would expedite deportations of certain noncitizens and insulate those decisions from both administrative and

judicial review.  *See Gomez-Cuzme v. Birkholz*, No. 2:23 Civ. 1753, 2023 WL 4423602, at *3

(C.D. Cal. June 1, 2023), *R&R adopted*, 2023 WL 4422830 (C.D. Cal. July 7, 2023); *accord*

*Osuna-Gutierrez v. Johnson*, 838 F.3d 1030, 1033–34 (10th Cir. 2016).  It is apparent, in other

words, that Congress intended expedited removal orders to be "final" in the ordinary sense of the

word, if not also within the meaning of 8 U.S.C. § 1101(a)(47).  Moreover, the Court has found

no authority for the proposition that expedited removal orders are not "final" for purposes of 8

U.S.C. § 1101(a)(47)(B) or the FSA, but it has found many instances of "district courts across

the country [concluding] that expedited orders of removal are 'final orders of removal'" for

purposes of the FSA.[6]  Rep. & Rec. at 7, *Lobon Rivas v. FCI Berlin*, No. 23 Civ. 111 (D.N.H.

Aug. 16, 2024), ECF No. 14, *approved*, (D.N.H. Sept. 26, 2024), ECF No. 15.

      Accordingly, the Court finds that the NOER is a "final order of removal" for purposes of

the FSA and BOP is, therefore, required to deny Harriot application of his earned time credits

toward early release.  18 U.S.C. § 3632(d)(4)(E)(i).

      B.  The October 2023 Detainer

      Harriot next contends that even if the NOER were a valid final order of removal, BOP

did not receive the NOER until April 2024 and, therefore, had no basis to decide in November

2023 to not apply Harriot's FSA credits toward his early release.  *See* Reply at 2 (arguing that

BOP refused to apply Harriot's FSA credits based on a detainer that was not "a final order of

removal").  Harriot advanced this argument in connection with his Petition, but the argument was

not addressed in the R&R.  *See* Harriot Decl. ¶¶ 6–7 (arguing that BOP acted unlawfully by

pushing his "release date from March 12, 2024, back to March 12, 2025" based on the October

---

[6] By the same reasoning, the Court rejects Harriot's argument that the NOER was merely "notice" of an order rather than an order itself.  Objs. at 7.

2023 detainer without any removal order on file). Accordingly, the Court reviews this issue *de novo*.

Harriot's argument has merit. Under the FSA, "[a] prisoner is ineligible to apply time credits . . . if [he] is the subject of a final order of removal." 18 U.S.C. § 3632(d)(4)(E)(i). The provision does not state that it applies to a prisoner who is solely the subject of a detainer. Indeed, although official BOP policy previously denied FSA credits to prisoners with "unresolved" immigration statuses, including those subject to immigration detainers, BOP changed this policy in February 2023 after multiple district courts found the policy to be inconsistent with the FSA's plain language. *See Correa-Gutierrez v. Warden*, No. 2:23 Civ. 8911, 2024 WL 1469348, at *3 (C.D. Cal. Feb. 2, 2024) (citation omitted), *R&R adopted*, 2024 WL 1468321 (C.D. Cal. Apr. 3, 2024). Under BOP's new policy, "prisoners subject to immigration detainers can apply [FSA credits] to their sentence." *Id.*

Here, BOP appears to have considered the October 2023 detainer sufficient evidence of a final order of removal to deny Harriot the application of his FSA credits. This was error. The detainer states that ICE "has determined that probable cause exists that [Harriot] is . . . removable . . . based on . . . [a] final order of removal against [him]." ECF No. 23-3 at 1 (capitalization altered). The mere assertion that there is probable cause to initiate removal proceedings based on an unspecified order is not, and does not substitute for, the presence of a valid, current, and final order of removal. Nor does such a statement provide BOP sufficient information to verify the existence of any removal order. It does not list the date of the order; the agency, branch, or officer that ordered it; the factual or legal basis for the order; whether an appeal could have been, or was, taken from the order; or even an indication of whether the order

10

remains valid.

As courts have long explained, an immigration detainer is a non-binding, inter-agency request for advanced notice and temporary continuation of custody upon a prisoner or detainee's scheduled release.  *See Roldan v. Racette*, 984 F.3d 85, 88 (2d Cir. 1993) (describing the "clear majority view" that an immigration detainer is merely "notice that future INS custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction"); *e.g.*, *United States v. Perez Sanchez*, No. 16 Cr. 661, 2024 WL 1069884, at *4 (E.D.N.Y. Mar. 12, 2024); *Bell v. INS*, 292 F. Supp. 2d 370, 373 (D. Conn. 2003).  A detainer is, in other words, distinctly not an "order."  It also not a sworn declaration of the information contained in a noncitizen's file with immigration authorities.  As one court recently remarked, if Congress had intended for detainers to suffice to deny application of FSA credits, it could have written the statute in that manner yet declined to do so.  An amendment to the FSA that would have "specifically exclud[ed] prisoners with immigration detainers from applying their earned time credits[] was offered on the floor of the Senate but did not pass."  *Komando v. Luna*, No. 22 Civ. 425, 2023 WL 310580, at *6 (D.N.H. Jan. 13, 2023) (citation omitted), *R&R adopted*, 2023 WL 1782034 (D.N.H. Feb. 6, 2023).

Since the FSA's enactment, courts have rejected the view that BOP may rely solely on an immigration detainer to deny application of credits earned under the statute.  *See, e.g.*, *Sierra v. Jacquez*, No. 2:22 Civ. 1509, 2022 WL 18046701, at *3, *5 (W.D. Wash. Dec. 27, 2022) ("The fact that [a petitioner] has an immigration detainer and appears to be [deportable] . . . are not grounds to find he is ineligible under § 3632."), *R&R adopted*, 2023 WL 184225, at *1 (W.D. Wash. Jan. 13, 2023) (finding a petitioner "not subject to a final order o[f] removal" despite the

presence of a detainer suggesting otherwise); *Alatorre v. Derr*, No. 22 Civ. 516, 2023 WL 2599546, at *6 (D. Haw. Mar. 22, 2023) ("[A]n immigration detainer, without more, no longer precludes a federal prisoner from applying earned time credits.").

Courts have also determined that detainers like Harriot's, which specifically indicate that the basis for the detainer is a "final order of removal," are insufficient to conclude that a prisoner is subject to a valid, current, and final removal order. *See, e.g.*, Order at 2, *Bautista v. Warden*, No. 23 Civ. 1122 (E.D. Cal. Dec. 12, 2023), ECF No. 11 (finding that an immigration detainer with a checked box "indicating [that] a final order of removal has been issued" did not provide sufficient information to "verify that [the] [p]etitioner [was] subject to a final order of removal"); Order at 2, *Sayasane v. Warden*, No. 23 Civ. 1517 (E.D. Cal. Mar. 22, 2024), ECF No. 17 ("The document is not a final order of removal, but an immigration detainer in which a box is checked indicating a final order of removal has been issued.  From this secondhand information alone, the Court cannot verify that [the] [p]etitioner is subject to a final order of removal."); Order at 2, *Hernandez-Velasquez v. Warden*, 24 Civ. 130 (E.D. Cal. May 8, 2024), ECF No. 8 ("The detainer references the existence of a final order of removal, but from the document alone, the Court cannot determine the validity of [p]etitioner's contention that it is merely a document with a box incorrectly checked.").

Other courts that have relied on such detainers to justify the denial of FSA credits have done so only when presented with independent information corroborating the contents of the detainer.  *See, e.g.*, *Ezeah v. Heckard*, 5:23 HC 2246, 2024 WL 4535976, at *5 (E.D.N.C. Oct. 21, 2024) (noting that the contents of the detainer were independently corroborated by immigration court records); *Gonzalez-Garcia v. FCI Berlin*, No. 23 Civ. 91, 2023 WL 3020872

(D.N.H. April 20, 2023), ECF No. 10 and ECF No. 7-2 at 9 (explaining that, after BOP officials received an ICE detainer referring to a purported "final order of removal," they "contacted ICE to verify that [the] [p]etitioner was subject to a final order of removal" and received confirmation to that effect from ICE). Although at least a few courts have found a detainer like Harriot's to be sufficient by itself for BOP to deny application of FSA credits, the Court finds the reasoning supporting such decisions to be unpersuasive. *See, e.g.*, *Duffis v. Thompson*, No. 3:23 Civ. 496, 2023 WL 3876496, at *2 (M.D. Pa. May 10, 2023); *United States v. Rios-Villanueva*, No. 5:11 Cr. 21, 2023 WL 186804, at *6 (D.S.C. Jan. 13, 2023).

In sum, BOP erred by relying solely on the contents of the October 2023 detainer to deny application of Harriot's FSA credits. Had it not done so, BOP might not have received the NOER any earlier than it did here, and Harriot might have been transferred out of BOP's secure custody, as he was scheduled to, on March 12, 2024. It is, therefore, possible that Harriot has served 11 more months in BOP's secure custody than he otherwise would have. Nevertheless, the Court cannot grant Harriot the relief he seeks in the Petition. Based on the facially valid, current, and final order of removal that BOP *now* has on file, there is no longer any doubt that BOP is prohibited by law from applying Harriot's FSA credits toward his early release. R&R at 10. Accordingly, Harriot cannot show that he is currently being held contrary to law as required under § 2241, and his Petition must, therefore, be denied. *See id.*

It must be emphasized, however, that from March 12, 2024, when Harriot was scheduled to be transferred to prerelease custody or supervised release, to April 8, 2024, when BOP first obtained a copy of the NOER from ICE, the apparent sole basis for the Government's continuing imprisonment of Harriot was the October 2023 detainer. That basis was invalid for the reasons

stated in this order.  Had BOP not relied upon the detainer, it would have been required to apply Harriot's credits toward early release from secure custody.  *See [Redacted] v. Fed. BOP*, No. 23 Civ. 5965, 2023 WL 9530181, at \*5 (S.D.N.Y. Dec. 28, 2023) (noting "the mandatory language of the FSA" and a "consistent line of cases from across the country holding that 18 U.S.C. § 3632(d)(C) does not afford [] BOP any discretion in releasing eligible prisoners . . . even if [the] prisoner has [a] detainer" (citation omitted)), *R&R adopted sub nom. Doe v. Fed. BOP*, 2024 WL 455309 (S.D.N.Y. Feb. 5, 2024); *Komando*, 2023 WL 3105850, at \*7.  Harriot may, therefore, have a plausible claim for money damages for false imprisonment for each day that he was imprisoned in BOP secure custody from March 12 to April 8, 2024.  The Court cannot grant that relief in connection with his Petition.  *See Mack v. Varelas*, 835 F.2d 995, 998 (2d Cir. 1987) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy." (emphasis omitted) (citation omitted)), *overruled in part on other grounds by Heck v. Humphrey*, 512 U.S. 477, 486–90 (1994).  Such relief could be sought, however, by bringing a claim under the Federal Tort Claims Act, beginning with the filing of a Standard Form 95.

## CONCLUSION

For the reasons stated above, Harriot's objections are SUSTAINED IN PART and OVERRULED IN PART, and the Petition is DENIED.

The Clerk of Court is respectfully directed to terminate all motions, close the case, and promptly mail a copy of this order to Petitioner *pro se*.

SO ORDERED.

Dated:  February 4, 2025
    New York, New York

_____
ANALISA TORRES
United States District Judge

14